UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAMAS HORVATH, | Case No.: 3:16-cv-00553-MMD-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | Re: ECF No. 30 |
| BRIAN WILLIAMS, SR., *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Steve Prentice's Motion for Summary Judgment arguing that Plaintiff's action should be dismissed because Plaintiff failed to exhaust his administrative remedies. (ECF Nos. 30, 30-1 to 30-4.) Plaintiff filed a response. (ECF No. 35.) Prentice filed a reply. (ECF No. 36.) Also, before the court is Plaintiff's motion for default judgment as to Defendant George McMurry. (ECF No. 53.)

After a thorough review, it is recommended that Prentice's motion be denied because the record reflects that administrative remedies were unavailable to Plaintiff when his informal level grievance was referred to the Inspector General's Office, seemingly indefinitely. In addition, it is recommended that Plaintiff's motion for default judgment as to McMurry be denied without prejudice.

///

///

# I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 10.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center. (*Id.*) Defendants are Steve Prentice, George McMurry, and a John Doe sergeant. (*See* ECF No. 9.)

On screening, Plaintiff was permitted to proceed with a failure to protect claim against Prentice and McMurry based on allegations that he informed Prentice twice that he did not feel safe around another inmate he was housed with; that McMurry may have instigated the threat to Plaintiff's safety by showing Plaintiff's complaint about the inmate to that inmate; and, that Plaintiff was subsequently assaulted by the inmate. (ECF No. 9.)  Plaintiff was also allowed to proceed with a due process claim against a John Doe sergeant based on the allegation that the sergeant intentionally deprived Plaintiff of his property based on procedures related to Plaintiff's housing classification. Plaintiff was instructed to move to amend his complaint when he learned the sergeant's identity. (*Id.*) Plaintiff was given leave to amend with respect to other claims, but elected to proceed only on these claims. (*See* ECF Nos. 13, 14.) He has not yet identified the John Doe sergeant.

Prentice filed this motion for summary judgment arguing that Plaintiff's action should be dismissed for failing to exhaust his administrative remedies. Plaintiff opposes the motion on the basis that the response to his informal level grievance stated that it was being forwarded to the Inspector General's Office and he has yet to receive a response.

The Attorney General's Office accepted service for Prentice, but not for McMurry, whose last known address was filed under seal. (ECF No. 25.) A summons was issued for service on

McMurry at the address provided under seal, but was returned unexecuted. (ECF Nos. 27, 28, 32.) Plaintiff requested and was granted an extension of time to have McMurry served at another address. (ECF Nos. 37-41.) In an odd turn of events, Plaintiff claims that McMurry is now serving a prison sentence at another NDOC facility. (ECF No. 40.) McMurry was ultimately served on June 20, 2018. (ECF No. 43.) McMurry has yet to file an answer or otherwise appear to defend this action. On July 26, 2018, Plaintiff filed a motion for clerk's entry of default under Federal Rule of Civil Procedure 55(a) (ECF No. 51), and the clerk entered default as to McMurry the following day (ECF No. 52). On July 30, 2018, Plaintiff filed a motion for default judgment as to McMurry under Rule 55(b). (ECF No. 53.)

## II. LEGAL STANDARD-SUMMARY JUDGMENT

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the

3

outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION-EXHAUSTION

The parties agree that the Prison Litigation Reform Act (PLRA) requires an inmate to exhaust *available* administrative remedies prior to filing a complaint. More specifically, the PLRA states: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The defendant has the initial burden of establishing a failure to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166-71 (9th Cir. 2014). Then the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). The ultimate burden of proof, however, remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89

(2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

It is undisputed that Plaintiff filed an informal grievance concerning the incident that is the subject of the failure to protect complaint on November 24, 2015, assigned grievance number 2006-30-13476. (ECF No. 30-3 at 2.) It is likewise undisputed that the response to the informal level grievance states: "Inmate Horvath, your grievance has been referred to the Office of the Inspector General for investigation." (ECF No. 30-3 at 3.) The grievance history report submitted by Prentice also indicates the disposition of the grievance as "denied." (*Id*.)

Plaintiff did not file a first or second level grievance. As such, Prentice argues he failed to properly exhaust his administrative remedies. Plaintiff, on the other hand, argues that administrative remedies were unavailable to him because he was told in response to his informal level grievance that his grievance was being forwarded to the Office of the Inspector General for investigation. While the response has a date of December 2015, Plaintiff's complaint alleges that because of a transfer, he did not receive it until March 11, 2016 (108 days after he had filed the

informal level grievance). (ECF No. 10 at 9.) Plaintiff alleges that he asked Caseworker Irvin about the status of the grievance, and she denied any knowledge and told him there was nothing else she could do and he had to wait to hear from the Inspector General. (ECF No. 10 at 10.) Nine months later after the date of the response, and six months after he received the response, he had heard nothing about his grievance, from the Inspector General's Office or otherwise, and he proceeded with filing his complaint. This is all discussed in his complaint and raised in response to Prentice's motion. As of the time Plaintiff filed his response to the motion (May 11, 2018), some two years and five months after being told his grievance was being referred to the Inspector General for review, Plaintiff has still heard nothing.

Prentice's reply maintains that Plaintiff did not exhaust administrative remedies because he did not file a first or second level grievance, and that if he disagreed with the referral to the Inspector General or felt it was taking too long, he should have said so in the first level grievance or a new grievance.

Prentice's reply does not address the status of the Inspector General's Review or the fact that it has been over two years and Plaintiff has heard nothing from the Inspector General about his grievance.

The court must address whether in not submitting a first and second level grievance and proceeding with filing the complaint Plaintiff failed to exhaust administrative remedies, or if the seemingly indefinite referral to the Inspector General's Office with no response rendered his administrative remedies unavailable.

Administrative Regulation (AR) 740, which governs the inmate grievance process within NDOC, provides that a prisoner must complete three levels of review with an informal, first and second level grievance. (ECF No. 30-4.)[1]

It also provides that when a grievance alleges staff misconduct, as Plaintiff's did, it will be reviewed by the warden, and if deemed appropriate, it will be forwarded to the Inspector General, which will be reflected in the informal response. (ECF No. 30-4 at 7, AR 740.05.11.A.) It goes on to state: "Timeframes are suspended until a disposition is received from the Inspector General's Office." (ECF No. 30-4 at 7-8, AR 740.05.11.B.) Unlike the discussion about review by the Inspector General's Office pertaining to sexual abuse, this portion of AR 740 does not state anything about proceeding with the next level grievances and does not give a response deadline for the Inspector General's Office. (*See* ECF No. 30-4 at 6, AR 740.05.2.B (grievances alleging sexual abuse are referred to the Inspector General's Office for investigation via a first level grievance and the inmate is instructed to file an informal level grievance for tracking purposes only, and the Inspector General is given 90 days to respond).)

An inmate need not exhaust when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). In *Ross v. Blake*, the Supreme Court agreed, stating the inmate was only required to exhaust those grievance procedures "that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S.Ct. at 1859. *Ross* provided a non-exhaustive list of circumstances where administrative remedies were not capable of use: (1) where the procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the

---

[1] The effective date of the version of AR 740 submitted by Prentice is September 16, 2014; however, Prentice's reply confirms this was the version still in effect when Plaintiff filed his informal level grievance.

8

administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

In addition, the Ninth Circuit has held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam, as amended). "In such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable." *Id*. (quoting *Ross*, 136 S.Ct. at 1859); *Brown v. Valoff*, 422 F.3d 926, 943 n. 18 (9th Cir. 2005) ("Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available."); and citing *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) (joining other circuits in holding "a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA"); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.")).

1    Prentice insists that Plaintiff was still required to complete the first and second level
2 grievances under AR 740. The court disagrees, or at least finds that AR 740 is sufficiently
3 confusing that no ordinary prisoner (or the court for that matter) can navigate how an inmate is to
4 proceed when he is told in response to an informal level grievance complaining of staff misconduct
5 that the matter is being referred to the Inspector General for review and then does not receive a
6 disposition from the Inspector General within a reasonable period of time.

7    First, the court points out that the grievance response simultaneously reflects that the
8 informal level grievance was denied and that it was being referred to the Inspector General's Office
9 for an investigation. It is unclear how a grievance can be denied when it has not yet been
10 investigated.

11    Second, AR 740 states that "timeframes" are suspended until a disposition is received from
12 the Inspector General's Office. The AR does not state what timeframes it is referring to. The
13 timeframe for filing a first level grievance? The timeframe for a response? While the regulation
14 provides a timeframe for the Inspector General to respond to a grievance referred for investigation
15 that pertains to allegations of sexual abuse, it gives no deadline for a response to other allegations
16 referred. Is an inmate supposed to wait six months, nine months, a year, two years, or even
17 indefinitely for a disposition from the Inspector General's Office?  Nor does AR 740 state whether
18 or how an inmate whose allegation of staff misconduct is referred to the Inspector General for
19 investigation is to proceed with respect to the remaining grievance levels. This contrasts with
20 sexual abuse allegations referred to the Inspector General, in which case the inmate is specifically
21 instructed  that they are to be filed in the first instance in a first level grievance and that an informal
22 level grievance is to be submitted for tracking purposes only.

Third, Prentice does not dispute Plaintiff's claim that Caseworker Irwin told him he just had to wait to hear from the Inspector General's Office. He waited, and waited, and nine months after the response was dated and six months after he received the response stating the matter had been referred to the Inspector General for an investigation, he had heard nothing. He has still not heard anything.

Under these circumstances, the court concludes that at the time the action was filed, administrative remedies were unavailable to Plaintiff. The Supreme Court implicitly recognized this outcome in *Ross v. Blake*. There, prison officials argued the inmate failed to seek relief through the grievance process, but there was a parallel provision requiring an inspector general to investigate charges of misconduct. *Ross*, 136 S.Ct. at 1860. The inmate argued that when that investigation commences, the inmate cannot obtain relief through the grievance process, even if the handbook said they could. *Id*. The evidence in the record gave credence to the inmate's position. *Id*. at 1861. Ultimately, the Supreme Court remanded the case for an analysis of whether administrative remedies were available, acknowledging that scenario could lead to a conclusion that administrative remedies were indeed unavailable. *Id*. at 1862.

Relying on *Ross*, the undersigned concluded in an analogous case that administrative remedies were unavailable under slightly different circumstances, but where the grievance had been referred to the Inspector General and the record reflected the Inspector General had yet to initiate, let alone give a disposition, as to the investigation. *See Lafferty v. Williams*, Case No. 3:16-cv-00279-RCJ-WGC, ECF No. 24, 2017 WL 8217698 (D. Nev. Dec. 6, 2017), report and recommendation adopted and accepted by District Judge Jones on March 9, 2018, 3:16-cv-00279-RCJ-WGC, ECF No. 25, 2018 WL 1245500.

In sum, Prentice's motion for summary judgment should be denied.

### IV. DEFAULT JUDGMENT AS TO MCMURRY

As indicated above, Plaintiff has moved for entry of default judgment as to Defendant McMurry after McMurry was served and failed to file an answer or otherwise appear, and after the clerk entered default under Rule 55(a). (ECF No. 53.) He asks the court to enter a default judgment against McMurry in the amount of $50,000, which is comprised of $10,00 for physical, mental and emotional injuries, and $40,000 for punitive damages. (*Id*. at 2.)

Default judgments are ordinarily disfavored. *See Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986). In exercising its discretion as to whether to enter a default judgment, courts consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citation omitted).

Failure to protect cases typically involve disputed facts; therefore, before entering default judgment on the claims against McMurry, the court would likely need to conduct an evidentiary hearing to determine the facts. In addition, there is no evidence submitted to support the requested amount of damages. In order to enter default judgment against McMurry as requested, the court would need to conduct an evidentiary hearing to determine the amount of damages if the allegations against McMurry are admitted, and determine whether punitive damages are supported. Fed. R. Civ. P. 55(b)(2)(B),(C).

If this Report and Recommendation is adopted and accepted, the failure to protect claim against Prentice will proceed, and Prentice will either bring a motion for summary judgment as to the substantive aspect of Plaintiff's failure to protect claim, or the matter will proceed to trial. In

the court's view, it makes sense to defer holding an evidentiary hearing to determine damages with respect to McMurry until after there is a disposition with respect to the claim against Prentice, which will involve many of the same facts. Therefore, it is recommended that Plaintiff's motion for entry of default as to McMurry be denied without prejudice at this juncture. Plaintiff may renew it once there has been a disposition of his claims against Prentice.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

(1) **DENYING** Prentice's motion for summary judgment (ECF No. 30); and

(2) **DENYING WITHOUT PREJUDICE** Plaintiff's motion for default judgment (ECF No. 53).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 26, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE