# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TAMAS HORVATH,

    Plaintiff

v.

BRIAN WILLIAMS, SR., et. al.,

    Defendants

Case No.: 3:16-cv-00553-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 89

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is the Motion for Summary Judgment filed by defendants Steve Prentice and Dale Roberson. (ECF Nos. 89, 89-1 to 89-10.) Plaintiff filed a response. (ECF No. 93.) Defendants filed a reply. (ECF Nos. 94, 94-1.)

    After a thorough review, it is recommended that the motion of defendants Prentice and Roberson be granted.

## I. BACKGROUND

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (*See* ECF Nos. 9, 80, 81.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC). (*Id.*) Defendants are Steve Prentice, George McMurry, and Dale Roberson, but only Prentice and Roberson have appeared, and they now move for summary judgment.

On screening, Plaintiff was permitted to proceed with a failure to protect claim against Prentice and McMurry based on allegations that Plaintiff informed Prentice twice that he did not feel safe around another inmate he was housed with; that McMurry may have instigated the threat to Plaintiff's safety by showing that inmate Plaintiff's complaint; and, Plaintiff was subsequently assaulted by that inmate. Plaintiff was also allowed to proceed with a due process claim against a John Doe sergeant, later identified as Roberson, based on allegations that Roberson intentionally deprived Plaintiff of his property based on procedures related to Plaintiff's housing classification. (ECF Nos. 9, 80 (substituting Roberson for the John Doe sergeant).)

Prentice previously moved for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to the failure to protect claim; however, the court recommended, and District Judge Du adopted the recommendation, that the motion be denied because the evidence demonstrated that administrative remedies were unavailable to Plaintiff. (*See* ECF Nos. 58, 59.)

As was referenced above, McMurry was served on June 20, 2018 (ECF No. 43), but never appeared or otherwise defended this action. According to Plaintiff and the Attorney General's Office, McMurray is currently incarcerated within the NDOC. The Clerk entered default against McMurry. (ECF No. 52.) Plaintiff moved for entry of default judgment; however, the court advised Plaintiff that it makes sense to defer holding an evidentiary hearing to determine damages with respect to McMurry until after there is a disposition with respect to the claim against Prentice, as it would involve many of the same facts. The court denied the motion for entry of default judgment, allowing Plaintiff to renew it once there is a disposition of the

claims against Prentice. (ECF No. 58 at 12-13.) Plaintiff moved again for an evidentiary hearing (ECF No. 66), which the court again denied as premature. (ECF No. 68.)

Defendants Prentice and Roberson now move for summary judgment, arguing: (1) Prentice did not violate Plaintiff's rights and he is entitled to qualified immunity; (2) Plaintiff failed to exhaust his administrative remedies for the due process claim against Roberson; and (3) Roberson did not deprive Plaintiff of his property, and Roberson is entitled to qualified immunity.

Plaintiff argues that there are disputed facts regarding his failure to protect claim against Prentice. Plaintiff contends that the motion should be denied with respect to Roberson because Roberson claims he was no longer the property officer assigned to the segregation unit during the time Plaintiff was housed there, but Plaintiff cannot adequately respond absent further discovery.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

1    party cannot establish an element essential to that party's case on which that party will have the

2    burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

3        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

4    establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

5    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

6    dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

7    be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

8    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

9    (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

10   by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

11   U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

12   pleadings and set forth specific facts by producing competent evidence that shows a genuine

13   dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

14                                    **III. DISCUSSION**

15   **A. Prentice**

16       Under the Eighth Amendment, prison conditions should not "involve the wanton and

17   unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime

18   warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

19   conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates

20   receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

21   guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting

22   *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

23

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol,* 776 F.3d 1046, 1050 (9th Cir.2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833  (internal citations omitted).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met.  *See Farmer*, 511 U.S. at 834; *Labatad*,  714F.3d at 1160.

First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Farmer*, 511 U.S. at 834  (citations and quotations omitted).  When a plaintiff claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*  (citations omitted).

Second, the inmate must satisfy the subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official

6

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Liability may only follow if a prison official 'knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

According to Prentice, who was a caseworker at SDCC at the relevant time, he received an anonymous kite on November 20, 2015, alleging there were drugs in a specific cell and an inmate was taking drugs to the chapel. There was no name on the kite or any information identifying who had written it. (Prentice Decl., ECF No. 89-3 at 4 ¶ 11.) As a caseworker, Prentice does not handle security issues such as drugs, and does not conduct cell searches. He showed the kite to his supervisor, and then within five minutes of receiving it, gave it to Officer McMurry, who said he would handle the situation. (*Id.*)

Prentice saw Plaintiff later that same morning, and Plaintiff mentioned nothing about the kite. Plaintiff did ask if he could be assigned to a new room because he did not like his cellmate, but did not express any concern over his safety. Prentice told Plaintiff he could put him in for a level advancement, which would necessitate a cell move, but it would have to be approved by his supervisor. (*Id.* ¶ 12.)

Later that afternoon, Prentice saw Plaintiff at approximately 2:30 p.m., and Plaintiff had marks on his face and appeared to have been in a fight. Plaintiff stated that an officer came to his cell and confronted him and his cellmate about the kite. Plaintiff's cellmate accused Plaintiff of writing the kite. Plaintiff explained that later that day his cellmate and two other inmates attacked him. (*Id.* ¶ 13.)

Prentice reported an issue raised in an anonymous kite to his supervisor and then showed the kite to McMurry. Prentice did not know it was written by Plaintiff. Plaintiff never brought the risk of his safety from his cellmate to Prentice's attention. Prentice did recall speaking to Plaintiff several weeks prior, on November 5, 2015, and Plaintiff complained about his cellmate, stating that he rarely bathed, used foul language, was rude and was messy, and so he wanted a new cellmate. He did not express any concern about his safety. Prentice advised Plaintiff he could not suggest a bed change based on hygiene or personality complaints. (ECF No. 89-3 at 3 ¶ 10.) Prentice did not see or participate in the attack.

Prentices version of events is corroborated in the Investigation Detail Report. (ECF No. 89-5.)

Plaintiff argues that there are genuine issues of material fact that preclude summary judgment in Prentice's favor. Plaintiff states: the environment at SDCC is stressful and dangerous; he is a first time offender who has not been exposed to the reality of prison life; he was strongly "coached" on several occasions by fellow inmates regarding the serious ramifications an inmate may suffer if caught "snitching" or conversing with staff about problems; he was a Hungarian national visiting the United States and had limited fluency in English. He argues that given these facts, it is easy to understand his reluctance in providing more specific details to Prentice regarding the problems he had with his cellmate. He also claims that Prentice should have been aware of his cellmate's extensive criminal history and violent tendencies. Plaintiff further contends that even though he requested a bed move from Prentice on several occasions, Prentice never asked him for further details or whether he feared his cellmate.

Prentice has submitted evidence demonstrating that he did not know of any risk posed to Plaintiff by his cellmate. While Plaintiff asked on several occasions for a bed change, he only

advised Prentice that the request was due to his cellmate's hygiene traits and that he felt his cellmate was rude and used foul language, but he does not present evidence that he gave Prentice any information from which Prentice could have gleaned that Plaintiff's cellmate posed a substantial risk to Plaintiff's safety. In fact, Plaintiff concedes that he did not convey to Prentice that he feared for his safety, but argues that Prentice should be liable anyway because other inmates advised him he could be in danger if he "snitched." The court is sympathetic to the precarious position Plaintiff perceived himself to be in; however, this does not change the fact that the Eighth Amendment requires knowledge on the part of the defendant in order to give rise to liability. If the prison official has no knowledge of a risk posed by another inmate, he cannot do anything to prevent the harm, and cannot be held liable in the event harm befalls an inmate.

Plaintiff also argues that Prentice should have known of his cellmate's criminal history and violent tendencies, without any elaboration as to what that entails and why that would have put Prentice on notice that his cellmate posed a specific risk to Plaintiff, this information is insufficient. Nor was it Prentice's duty to further inquire whether he felt any risk to his safety after Plaintiff approached him about a bed move, when he only noted his cellmate's hygiene and personality traits.

In *Cortez v. Skol*, 776 F.3d 1046 (9th Cir. 2015), the Ninth Circuit found there was sufficient evidence that the prison officer was subjectively aware of the risk posed to an inmate when the record reflected that the officer knew of hostility between the inmates, that the plaintiff had protective custody status, that the officer did not use the required restraints on escorting the inmate, and the officer was not willing to intervene when the attack began.

In *Wilk v. Neven*, --- F.3d ---, 2020 WL 1949281, at *4 (9th Cir. Apr. 23, 2020), Wilk reported a threat from Nunley, and the officer was at the classification meeting where the threat

was discussed. Wilk was relocated, but his relocation allowed contact with Nunley as the two units shared the same yard. Here, the Ninth Circuit also found that a jury could find that the officer was subjectively aware of the substantial risk of harm.

Nothing approaching the quantum of evidence in *Cortez* or *Wilk* is present here. Plaintiff's cellmate's size alone and a vague argument that Prentice should have known of his cellmate's criminal history are insufficient to infer subjective awareness of any risk posed by the cellmate.

Therefore, summary judgment should be granted in Prentice's favor.

**B. Roberson**

Plaintiff argues that he needs time to conduct additional discovery to respond to the merits of the argument asserted by Roberson as to the due process property claim (that Roberson was not working in the relevant place at that time); however, Plaintiff provides no response to Roberson's argument that Plaintiff failed to exhaust administrative remedies as to this claim.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id.* (*overruling in*

*part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id.*

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's

1   requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v.*

2   *Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative

3   remedies "under the PLRA despite failing to comply with a procedural rule if prison officials

4   ignore the procedural problem and render a decision on the merits of the grievance at each

5   available step of the administrative process." *Reyes*, 810 F.3d at 658.

6       Administrative Regulation (AR) 740 contains NDOC's grievance process. An inmate

7   must complete three levels of grievance review before administrative remedies are considered

8   exhausted: informal, first and second levels. (ECF No. 89-9.)

9       Plaintiff initiated an informal level grievance on December 6, 2015, identified as

10  grievance 20063013500, stating that he had been in Unit 8 for 18 days and still did not have his

11  basic property (shower shoes, towel, laundry bag, legal files, stamps, envelopes, address book,

12  Bible). (ECF No. 89-6 at 3.) He received a response stating that multiple items are not allowed

13  when an inmate is housed in transitional detention, and that he was transferred to NNCC as soon

14  as was administratively possible. Upon departure the confiscated property is returned. (ECF No.

15  89-6 at 2.) He never filed a first or second level grievance to complete the administrative

16  grievance process. (ECF No. 89-7.)

17      Plaintiff did not respond to the exhaustion argument or otherwise show that

18  administrative remedies were unavailable to him. Since the evidence demonstrates Plaintiff

19  failed to proceed through each of the levels of NDOC's grievance process, Roberson's motion

20  should be granted on the basis that Plaintiff failed to exhaust his administrative remedies.

21      Typically, if the court concludes that administrative remedies have not been properly

22  exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at

23  1120, *overruled on other grounds by Albino*, 747 F.3d 1162. Here, under AR 740, an inmate

must file an informal grievance within six months if the issue involves personal property damage or loss. (ECF No. 89-9 at 6, AR 740.05.4.A.) Plaintiff is well beyond the deadline to initiate a new informal level grievance regarding this property issue; therefore, summary judgment should be granted in Roberson's favor and the due process claim should be dismissed with prejudice.

Since the unrefuted evidence submitted by Roberson demonstrates that Plaintiff did not properly exhaust administrative remedies for the due process claim asserted against Roberson, Plaintiff's request to defer or delay ruling on the motion as to Roberson under Federal Rule of Civil Procedure 56(d) should be denied.

**C. McMurry**

The court will issue an order setting an evidentiary hearing regarding the request for default judgment against McMurry.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** the Motion for Summary Judgment (ECF No. 89) filed by defendants Prentice and Roberson for the reasons stated herein, and **DENYING** Plaintiff's request to defer ruling on the motion under Federal Rule of Civil Procedure 56(d).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

1    2. That this Report and Recommendation is not an appealable order and that any notice of

2  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

3  until entry of judgment by the district court.

4

5  Dated: May 12, 2020

6                                                                    _William G. Cobb_____

7                                                                    William G. Cobb
                                                                     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23